UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARILYN MCCOY, | ) | |
| Guardian of minor, P.W., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|         v. | ) | Case No. 14-cv-30188-KAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
|     Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO REVERSE THE
DECISION OF THE COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM THE
DECISION OF THE COMMISSIONER
(Dkt. Nos. 19 & 21)

ROBERTSON, U.S.M.J.

> I.     Introduction

This is an action for judicial review of a final decision by the Defendant, the Acting

Commissioner of the Social Security Administration ("Commissioner"), regarding a minor's

entitlement to Supplement Security Income ("SSI") pursuant to 42 U.S.C. § 1383(c)(3)

(referencing 42 U.S.C. § 405(g)).  On behalf of the minor ("P.W."), Marilyn McCoy ("Plaintiff")

asserts that the Commissioner's decision that P.W. was no longer disabled as of June 1, 2011 –

memorialized in a June 20, 2013 decision by an administrative law judge ("ALJ") – is in error

and not supported by substantial evidence.  Plaintiff has moved to reverse the decision of the

Commissioner (Dkt. No. 21) and requests that P.W.'s benefits be reinstated and that he receive

retroactive payments (Dkt. No. 1 at 6).  The Commissioner has moved for an order affirming her

1

decision on the grounds that it is supported by substantial evidence and not erroneous. (Dkt. No. 19).

The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the following reasons, the court will deny Plaintiff's motion to reverse and allow the Commissioner's motion to affirm.

II.      Procedural Background

In October 2001, P.W. was found disabled due to a respiratory impairment that met Listing 103.03B of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing 103.03B") (Administrative Record ("A.R.") at 93, 74, 27).  In June 2011, the SSA conducted a continuing disability review in P.W.'s case (*id.* at 74, 70-71, 27-28).[1]  After review of various medical records, the SSA found that P.W.'s "condition ha[d] medically improved," and that new medical evidence demonstrated that his "health ha[d] improved and he no longer me[t] the disability requirements" (*id.* at 74).  P.W. was therefore deemed "no longer disabled" as of June 1, 2011 (*id.*).  After a hearing on reconsideration, that determination was upheld in a December 23, 2011 decision by a disability hearing officer (*id.* at 23, 77, 90-100).[2]  Plaintiff timely requested review of the hearing officer's decision and a hearing before an administrative law judge (*id.* at 103-148, 23).  A hearing before the ALJ was held initially on February 14, 2013, continued, and then

---

[1] *See* 20 C.F.R. § 416.994a(a) ("There is a statutory requirement that, if you are eligible for disability benefits as a disabled child, your continued eligibility for such benefits must be reviewed periodically."); Understanding SSI Home Page, Understanding Supplemental Security Income Continuing Disability Reviews, http://www.ssa.gov/ssi/text-cdrs-ussi.htm (last visited July 21, 2015).

[2] Pursuant to 20 C.F.R. § 416.994a(b), the disability hearing officer found (1) P.W.'s impairment had medically improved; (2) the impairment no longer met, medically equaled, or functionally equaled Listing 103.03B; and (3) currently, P.W. had no severe medically determinable impairment (Administrative Record ("A.R.") at 94-95).  Accordingly, P.W.'s disability had ended and no further analysis was required (*id.* at 95-97).

resumed on May 9, 2013 (*id.* at 40-69).[3]  The ALJ issued her decision on June 20, 2013, finding

that Plaintiff was no longer disabled as of June 1, 2011 (*id.* at 20-39).  Plaintiff sought review of

the ALJ's decision by the Appeals Council and submitted new medical evidence in support of

her appeal (*id.* at 6-19).  On August 25, 2014, the Appeals Council denied Plaintiff's request for

review (*id.* at 1-5).  Thus, the ALJ's decision became the final decision of the Commissioner.

This appeal followed.

      III.     <u>Standard of Review</u>

      This court may affirm, modify or reverse a decision of the Commissioner upon review of

the pleadings and the record.  42 U.S.C. § 405(g).  This review is limited, however, "to

determining whether the ALJ used the proper legal standards and found facts upon the proper

quantum of evidence."  *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000) (citing

*Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)).  Under 42 U.S.C. § 405(g), this Court must

accept the factual findings of the Commissioner as conclusive "if supported by substantial

evidence."  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the

evidence in the record as a whole, could accept it as adequate to support [the Commissioner's]

conclusion."  *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

In applying the substantial evidence standard, the court must be mindful that it is the province of

the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence,

and draw conclusions from such evidence.  *Irlanda Ortiz v. Sec'y of Health & Human Servs.*,

955 F.2d 765, 769 (1st Cir. 1991).  So long as the substantial evidence standard is met, the ALJ's

factual findings are conclusive even if the record "arguably could support a different

---

[3] After the ALJ explained to Plaintiff that she could have legal representation and that P.W. was permitted to testify at the hearing, Plaintiff chose to postpone the hearing in order to contact attorneys and have P.W. present at the next hearing (A.R. at 40-49).  At the second hearing, Plaintiff had not obtained counsel; she elected to proceed on her own, and P.W. testified (A.R. 52, 55-57).

conclusion." *Id.* at 770.  The ALJ's findings of fact, however, "are not conclusive when derived

by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen*,

172 F.3d at 35.  Thus, if the ALJ made a legal or factual error, the court may reverse or remand

such a decision to consider new material evidence or to apply the correct legal standard.  *See*

*Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); 42 U.S.C. §

405(g).

IV.    Discussion

A. Childhood Disability Standard Under 20 C.F.R. § 416.924 and Medical Improvement
Review Standard Under 20 C.F.R. § 416.994a(b)

An individual under the age of eighteen is considered disabled and entitled to SSI if he or

she "has a medically determinable physical or mental impairment, which results in marked and

severe functional limitations, and which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

1382c(a)(3)(C)(i).  Such a determination is made pursuant to a three-step analysis set forth in 20

C.F.R. §§ 416.924(b)-(d).[4]  *See, e.g.*, *Belivau v. Apfel*, 154 F. Supp. 2d 89, 93 (D. Mass. 2001);

*Nelson ex rel. S.N. v. Astrue*, No. CIV. A 09-10729-JGD, 2010 WL 3081690, at *10 (D. Mass.

Aug. 6, 2010).  P.W. was found disabled pursuant to this standard in October 2001.  Because that

decision is the most recent favorable determination in this case, it is referred to as the

comparison point decision ("CPD") (A.R. at 27, 93).  *See* Social Security Program Operations

Manual System ("POMS") § DI 28010.105, Comparison Point Decision (referencing 20 C.F.R. §

---

[4] The Commissioner first determines whether the child is engaging in "substantial gainful
activity."  20 C.F.R. § 416.924(b); 42 U.S.C. § 1382c(a)(3)(C)(ii).  If not, the Commissioner next
determines whether the child has an impairment or a combination of impairments that is
"severe."  20 C.F.R. § 416.924(c).  Third, the Commissioner determines whether the child has an
impairment that meets, medically equals, or functionally equals an impairment included in the
"Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §
416.924(d).  If the impairment does not meet, medically equal, or functionally equal a listed
impairment, the child is not disabled for purposes of receiving SSI.  20 C.F.R. § 416.924(d)(2).

416.994a(c)(1) ("The most recent favorable decision is the latest final determination or decision involving a consideration of the medical evidence and whether you were disabled or continued to be disabled")); Social Security Ruling, SSR 05-03p, 70 FR 21833-01, 2005 WL 952065 (Apr. 27, 2005).  In 2011, the CPD was subject to a continuing disability review ("CDR").

When conducting a CDR, the Commissioner applies a three-step sequential evaluation process known as the "medical improvement review standard" or "MIRS" set forth in 20 C.F.R. § 416.994a(b).  *See* SSR 05-03P, 2005 WL 952065, at *1.  At the first step, the Commissioner determines whether the impairment(s) the child had at the time of the CPD has medically improved.  20 C.F.R. § 416.994a(b)(1).  "Medical improvement is any decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was found] disabled or continued to be disabled."  20 C.F.R. § 416.994a(c).  Such a determination must be based on changes, i.e., improvement, in the symptoms, signs, or laboratory findings associated with such impairment(s).  *Id.*; *see* 20 C.F.R. § 416.928 (defining "symptoms, signs, and laboratory findings").  While a decrease in severity may be of any quantity or degree, minor changes are disregarded.  20 C.F.R. § 416.994a(c).  If no medical improvement has occurred, the child's disability continues; if there has been medical improvement, the Commissioner proceeds to step two.  20 C.F.R. §§ 416.994a(b)(1)-(2).[5]

At step two, the Commissioner determines whether the CPD impairment(s) still meets, medically equals, or functionally equals "the severity of the listed impairment that it met or equaled at the time of the CPD."  20 C.F.R. § 416.994a(b)(2).  "As long as [the Commissioner] determine[s] that the CPD impairment(s) currently meets or medically or functionally equals the

---

[5] "At each step of the process certain 'exceptions to medical improvement' may apply, under which disability can be found to have ended even though medical improvement has not occurred." SSR 05-03P, 2005 WL 952065, at *1 n.1 (quoting 20 C.F.R. §§ 416.994a(e)-(f)). None of these exceptions are applicable here.

listing [ ] considered before, [the Commissioner] does not have to make the same finding [ ] made at the CPD." SSR 05-03P, 2005 WL 952065, at *1. If the CPD impairment(s) still meets, medically equals, or functionally equals the listing considered at the CPD, the child remains disabled. *See id.*; 20 C.F.R. § 416.994a(b)(2). If not, the Commissioner must proceed to the third and final step.

At step three, the Commissioner determines whether the child is *currently* disabled, considering all impairments, including any not present or not considered at the CPD. 20 C.F.R. § 416.994a(b)(3); SSR 05-03P, 2005 WL 952065, at *1. The child's current impairment(s) must first be deemed severe. 20 C.F.R. § 416.994a(b)(3)(i); SSR 05-03P, 2005 WL 952065, at *1; *see* 20 C.F.R. § 416.924(c) ("If you do not have a medically determinable impairment, or your impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, we will find that you do not have a severe impairment(s) and are, therefore, not disabled."). If not severe, the child's disability has ended. 20 C.F.R. § 416.994a(b)(3)(i). If the current impairment(s) is severe, the Commissioner considers whether it meets or medically equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.994a(b)(3)(ii); SSR 05-03P, 2005 WL 952065, at *1; *see also* 20 C.F.R. §§ 416.925, 416.926. If it does, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(ii). If not, the Commissioner considers whether the child's current impairment(s) functionally equals any of the listings. 20 C.F.R. § 416.926a(b)(3)(iii); SSR 05-03P, 2005 WL 952065, at *1; *see also* 20 C.F.R. §§ 416.925, 416.926a. If it does, the disability continues, but if not, the child's disability ends. 20 C.F.R. § 416.994a(b)(3)(iii).

B. Plaintiff's Challenge

On February 25, 2015, Plaintiff filed an "Answer to Motion to Affirm Commissioner's Decision and Memorandum in Support of," which was docketed as a motion to reverse the

decision of the Commissioner (Dkt. No. 21).  In the motion, she argues that the court "should

overturn" the decision by the SSA denying P.W.'s disability benefits (Dkt. No. 21 at 1).[6]

Plaintiff asserts that P.W. was born prematurely and addicted to crack cocaine (Dkt. No. 21 at 1),

and as a result, he "will continue to have long term[] problems, some which will not show up

until later childhood and even adulthood, mostly cognitive delays and mental, behavioral, and

psychological issues" (*id.* at 1-2).[7]  She argues that the ALJ erred in only considering P.W.'s

original claim of asthma and not his narcotics addiction at birth, that P.W. meets one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that the ALJ failed to consider

recent medical evidence, namely, a neuropsychological evaluation by Mark R. Elin, Ph.D. of

Baystate Heath, dated August 8, 2013, and an evaluation by Jodi M. DeVine, LICSW, of

Baystate Medical Center referring P.W. for the evaluation (*id.* at 3, 6; A.R. at 6-16).  Plaintiff

additionally seeks review of the Appeals Council decision denying review of the ALJ's decision

(Dkt. No. 1).

    Plaintiff is not seeking reversal based on P.W.'s respiratory impairment.[8]  In essence, she

is focusing on the third step of the ALJ's analysis where the ALJ considers whether the child is

currently disabled.  Because this case is a CDR case, however, as part the standard of review the

ALJ was required to apply, the ALJ had to address the impairment for which P.W. was initially

---

[6] On October 27, 2014, Plaintiff filed the complaint (Dkt. No. 1).  She subsequently filed a
response to both Defendant's answer and the administrative record (Dkt. No. 18) and later filed a
response to Defendant's sur-reply (Dkt. No. 25).  The court has reviewed each document.

[7] Plaintiff also contends that, "it is in the interest of the public that benefits continue to be made
available for all children born addicted to crack cocaine and other addictive and dangerous
drugs" (Dkt. No. 21 at 8).

[8] Plaintiff states that "the issue of asthma is a foregone conclusion; asthma is not the cause for
this action," and "P.W.'s asthma was not ever an issue during [the] hearing before [the ALJ]"
(Dkt. No. 21 at 6).

found disabled.  Thus, although Plaintiff does not make any argument regarding the ALJ's

determination that P.W.'s disability based on his respiratory impairment had ended as of June 1,

2011, because it is a required part of one of the decisions from which Plaintiff appeals, the court

will address each step of the ALJ's decision in addition to Plaintiff's arguments set forth above.

1. The ALJ's Decision

To determine whether P.W.'s disability had ended as of June 1, 2011 and whether he was

currently disabled, the ALJ applied the three-step MIRS analysis pursuant to 20 C.F.R. §

416.994a(b).  At step one there was no error of law and substantial evidence supported the ALJ's

finding that P.W.'s impairment had medically improved as of June 1, 2011 (A.R. at 28).  The

record at the time of the CPD showed that P.W. was born prematurely with a low birth weight

and had reactive airway disease (A.R. at 93, 74, 27).  He required several hospitalizations,

starting the day he was born and updraft treatments multiple times a day while at home (*id.* at 27,

93).  As noted in the ALJ's decision, RiverBend Medical Group records, dated 2010-2011,

indicated that P.W.'s "respiratory difficulties [had] resolved," and that the disability hearing

officer found P.W.'s "asthma [was] no longer a medically determined severe impairment" (*id.* at

29).  Indeed, according to Plaintiff, since P.W. began living with her, there have been no issues

with breathing difficulties, and he never had an asthma attack (*id.* at 65, 93).

In light of this evidence, the ALJ properly found that P.W.'s CPD impairment neither met

nor medically equaled Listing 103.03B, as it was written at the time of the CPD (*id.* at 29).

Continuing with the step two analysis, the ALJ further found that, "[s]ince June 1, 2011, the

impairment that [P.W.] had at the time of the CPD has not functionally equaled the Listing of

Impairments" (*id.*).[9]  Substantial evidence, in the form of the RiverBend Medical Group records,

_____

[9] At this stage, the ALJ was required to only consider whether the CPD impairment still
functionally equaled Listing 103.03B, as it was written at the time of the CPD.

supported the ALJ's finding that, since June 1, 2011, P.W.'s CPD impairment did not

functionally equal any of the listed impairments (A.R. at 29) and, more specifically, that since

June 1, 2011, he had no limitations in any of the six domains of functioning as a result of his

CPD impairment (A.R. 31-35).

At step three, the ALJ found that the evidence of record established that (1) at the time of

the CPD, P.W. did not have any impairment(s) other than the respiratory impairment that had not

been considered, and (2) P.W. had not developed any additional impairment(s) subsequent to the

CPD (A.R. at 35).  Substantial evidence supports these findings (*id.* at 27-28, 30-31).  *See*

*Rodriguez*, 647 F.2d at 222 (substantial evidence exists "if a reasonable mind, reviewing the

evidence in the record as a whole, could accept it as adequate to support [the Commissioner's]

conclusion").  As part of her step two analysis, the ALJ thoroughly considered the evidence of

record in light of Plaintiff's argument that P.W. had other impairments.  She correctly

determined, based on her thorough review of the evidence, that P.W. currently did not have an

impairment or combination of impairments that met, medically equaled or functionally equaled

*any* of the listed impairments (A.R. at 35).  The ALJ therefore concluded that P.W.'s disability

had "ended as of June 1, 2011, and [he had] not become disabled again since that date" (*id.* at

36).

   2. Plaintiff's Arguments Pertaining to Step Three

Plaintiff argues that the ALJ erred by failing to consider that P.W. was born addicted to

narcotics and the residual effects of that event.  To the contrary, the ALJ acknowledged a

statement by Victor J. Carbone, Ph.D., who conducted a consultative examination on May 19,

2011, that P.W. was born addicted to crack cocaine, as well as Plaintiff's testimony that P.W.

was born prematurely with a crack addiction (A.R. at 27, 30).  The ALJ noted that, at the

hearing, Plaintiff attributed P.W.'s alleged learning and behavioral problems to the addiction,

and that according to Plaintiff, P.W. had serious organizational, learning and anger problems that

were increasing in severity (*id.* at 30, 57-58).  Plaintiff, however, had not requested any help

from his school regarding these issues, and P.W. had never been provided with an individualized

education program (*id.* at 30, 58-59).  Furthermore, while P.W.'s newborn records indicated that

his mother had used cocaine during pregnancy, there was no evidence that P.W. was treated for

withdrawal (*id.* at 30).  Therefore, the ALJ did not erroneously ignore Plaintiff's claim that P.W.

was born addicted to narcotics, and there was no evidence to support Plaintiff's assertion that

"P.W. will have lifelong issues and difficulties due to the negative circumstances of [his] birth"

(Dkt. No. 21 at 5).

In fact, the ALJ accorded great weight to the consultative examination of Dr. Carbone,

which she discussed thoroughly in the decision and found consistent with the greater weight of

evidence (A.R. at 27-28, 30, 272-283).  The ALJ noted that Dr. Carbone found P.W. did very

well in school with A/B grades and engaged well academically and that he had outstanding

verbal comprehension and memory scores and would likely do well in college (A.R. at 28).  Dr.

Carbone found that P.W. did not have a thought disorder and his memory and abstract reasoning

skills were quite strong (*id.*).  He also noted no evidence of hyperactivity and minimal behavior

problems (*id.*).  He further stated that P.W. had many friends and did what Plaintiff asked of him

(*id.*).  Dr. Carbone opined that P.W. had no significant difficulties with learning (*id.*).  There was

substantial evidence for the ALJ to conclude that P.W. did not have any impairments as a result

of a possible narcotics addiction at birth (*id.* at 35)  Plaintiff further contends that the ALJ

improperly ignored more recent records from Dr. Elin, dated August 8, 2013, and Ms. DeVine,

dated May 9, 2013 (Dkt. No. 21 at 3, 4).  That evidence, however, was presented for the first

time to the Appeals Council.  It was not before the ALJ, and she could not consider it.

Plaintiff also submits that P.W. has impairments that currently meet 20 C.F.R. Pt. 404,

Subpart P, Appendix 1, § 112.02 ("Listing 112.02") (Dkt. No. 21 at 2).  Plaintiff did not raise

this argument during the hearing before the ALJ.  Nonetheless, at step three, the ALJ considered

whether P.W.'s current impairment(s), if any, met, medically equaled, or functionally equaled

*any* of the listed impairments.  As discussed, the ALJ properly determined that because P.W. had

no new impairments as of June 1, 2011, and his CPD impairment had resolved as of that date, he

did not currently meet or equal any of the listed impairments.  Plaintiff's argument is therefore

unavailing.

Even assuming P.W. had developed new impairments, in order to meet Listing 112.02

(Organic Mental Disorders), a claimant must demonstrate abnormality in perception, cognition,

affect, or behavior associated with a dysfunction of the brain.  To reach the required level of

severity for such disorders, the claimant must satisfy both Part A *and* Part B of the listing.  In

regard to Part A, the claimant must show medically documented persistence of at least one of the

following: developmental arrest, delay, or regression; disorientation to time and place; memory

impairment; perceptual or thinking disturbance; disturbance in personality; disturbance in mood;

emotional lability; impairment of impulse control; impairment of cognitive function, as measured

by clinically timely standardized psychological testing; or disturbance in concentration, attention,

or judgment.  20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 112.02A.  There was no medical

documentation in the record reflecting that P.W. has any of these impairments.

Plaintiff focuses on the Part B criteria, which requires at least two of the following:

marked impairment in age-appropriate cognitive/communication functioning; marked

impairment in age-appropriate social functioning; marked impairment in age-appropriate

personal functioning; and marked difficulties in concentration, persistence, or pace.  20 C.F.R.

Pt. 404, Subpt. P, App. 1 § 112.02B2.  Contrary to Plaintiff's assertion, the record evidence

considered by the ALJ reveals that P.W. had little to no difficulty with cognitive or

communicative functioning. (A.R. at 258, 273, 275-276).   Moreover, as the ALJ noted, P.W.

functioned well academically, socially and personally, and there was no evidence of marked

difficulties with concentration, persistence, or pace.  Plaintiff, therefore, has not met her burden

in demonstrating that P.W. has impairments that meet or equal Listing 112.02.  *See Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990); *Dudley v. Sec'y of Health & Human Sevs.*, 816 F.2d 792, 793

(1st Cir. 1987).

     3. Review by the Appeals Council

     Finally, Plaintiff asserts that the Appeals Council erroneously denied review of the ALJ's

decision when it refused to consider the new evidence - - records from Dr. Elin and Ms. DeVine

- - that she had submitted.  "The Appeals Council has 'a great deal of latitude' in deciding which

cases to review, and, accordingly, its decision is only reviewable to the extent that it rests on 'an

explicit mistake of law or other egregious error.'"  *Anderson v. Astrue*, 682 F. Supp. 2d 89, 97

(D. Mass. 2010) (quoting *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001)).  This standard has been

described as "exceedingly narrow."  *Harrsion v. Barnhart*, No. 06-CV-30005-KPN, 2006 WL

3898287, at *2 (D. Mass. Dec. 22, 2006).

     Here, the Appeals Council determined that the evidence submitted by Plaintiff, Dr. Elin's

evaluation and Ms. DeVine's opinion letter, did "not show a reasonable probability that, either

alone or when considered with the other evidence of record, [it] would change the outcome of

the decision" (A.R. at 3) (citing 20 C.F.R. § 405.401(c)).  Thus, the Appeals Council was not

required to consider the evidence in determining whether to review the ALJ's decision.  *See* 20

C.F.R. § 405.401(c) (where new and material evidence is submitted, the Appeals Council must "consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision, and only if [the claimant] show[s] that there is a reasonable probability that the evidence, alone or when considered with the other evidence of record, would change the outcome of the decision").[10]  The Appeals Council did not make "an explicit mistake of law or other egregious error" in denying review of the ALJ's decision.  *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001).

Plaintiff's concern for her ward is commendable.  The new records, however, were "not of sufficient weight to overcome the deference owed to the Appeals Council."  *Shea v. Colvin*, No. 12-12420-JLT, 2013 WL 5952992, at *10 (D. Mass. Nov. 3, 2013).  Ms. DeVine, a licensed social worker, stated that "[i]t is definitely a *possibility* that prenatal exposure to crack has had neurodevelopmental/neurocognitive implications that would only be well identified and explained through neuropsychological testing," but she relied on Plaintiff's reporting that P.W. experienced withdrawal symptoms (A.R. at 16, 14) (emphasis added).  She was "not convinced of the ADHD diagnosis given [the] lack of positive scores on some teacher scales and also given that [she could not] dismiss the possibility that [P.W.] had a deficit with cognitive functioning and/or executive functioning that look[ed] like ADHD but actually ha[d] a different cause" (*id.* at 16).  Dr. Elin's report indicated that P.W. did not "satisfy a diagnosis" for ADHD and he did not "satisfy specific criteria at [that] time for a Learning Disorder" (*id.* at 10).  While Dr. Elin recommended occupational therapy services to address processing slowness in certain areas, he also noted that P.W. was challenged by complex visual spatial material, which "*may*, in the future, interfere with his academic performance for interpreting maps, performing algebra

---

[10] The claimant must also show why he or she was prevented from submitting the additional evidence earlier.  *See* 20 C.F.R. § 405.401(c)(1)-(3).  The record contains no evidence of Plaintiff having provided a reason for delay.

operations, geometry, and even in the area of expressive language abilities," and that his

"neurocognitive weaknesses *may* heavily impact on his academic abilities at times" (*id.* at 10,

11) (emphasis added)).  The Appeals Council's decision was not an egregious mistake.

V. Conclusion

      For the reasons stated, Plaintiff's motion to reverse (Dkt. No. 19) is DENIED, and the

Commissioner's motion to affirm (Dkt. No. 21) is GRANTED.


It is So Ordered.                                   /s/ Katherine A. Robertson
                                                    KATHERINE A. ROBERTSON
DATED: July 31, 2015                                United States Magistrate Judge